FILED & ENTERED

MAR 28 2014

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY egarcia    DEPUTY CLERK

**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>MARIA VICTORIA READE,<br><br><br><br><br><br><br><br>          Debtor. | Case No. 2:11-bk-53726-PC<br><br>Chapter 7<br><br>**MEMORANDUM DECISION**<br><br>Date:   March 13, 2014<br>Time:  9:00 a.m.<br>Place:  United States Bankruptcy Court<br>            Courtroom # 1468<br>            255 East Temple Street<br>            Los Angeles, CA  90012 |

     Sam Leslie, Chapter 7 Trustee ("Leslie") objects to the Amended Schedule C filed by the Debtor, Maria Victoria Reade ("Reade") on January 10, 2014, claiming a $75,000 homestead exemption in the real property and improvements located at 8576 Cole Crest Drive, Los Angeles, CA (the "Property").  Having considered the papers, the evidentiary record,[1] and arguments of

---

[1] The court takes judicial notice of Exhibits 1 through 7 attached to Request for Judicial Notice in Support of Chapter 7 Trustee's Motion Objecting to Debtor's Amended Homestead Exemption ("Leslie's RJN").   With respect to the Chapter 7 Trustee's Evidentiary Objections to Declaration of Victoria Reade in Support of Her Opposition to Motion Objecting to Debtor's Amended Homestead Exemption ("Leslie's Evidentiary Objections"), the court sustains the following objections on the grounds set forth therein:  1, 4, 5, 7, 9, 10, 11, 36 and 37.  The balance of Leslie's Evidentiary Objections are overruled.

1

counsel, the court overrules Leslie's objection based upon the following findings of fact and conclusions of law made pursuant to F.R.Civ.P. 52(a),[2] as incorporated into FRBP 7052 and applied to contested matters by FRBP 9014(c).

## I. STATEMENT OF FACTS

On October 20, 2011, Reade filed a voluntary petition under chapter 7 of the Bankruptcy Code. Leslie was appointed as trustee. In Schedule A filed on November 3, 2011, Reade disclosed the Property valued at $1,500,000. In Schedule D, Reade disclosed that the Property was encumbered by consensual liens totaling $1,901,012.07: A first deed of trust lien in favor of Central Mortgage Company securing a debt in the amount of $1,501,177.00 and a second deed of trust lien in favor of Real Time Resolutions securing the balance of $399,835.07 due on an equity line of credit. Reade did not claim an exemption in the Property in Schedule C. Instead, Reade claimed as exempt various items of personal property totaling $43,099 pursuant to California Code of Civil Procedure § 703.140(b).

Based upon a Notification of Asset Case filed by Leslie prior to conclusion of the creditors' meeting, the bankruptcy clerk served a Notice of Possible Dividend and Order Fixing Time to File Claims on January 14, 2012, notifying creditors that assets would be administered by the trustee and to file proofs of claim not later than April 16, 2012.

On April 2, 2012, Central Mortgage Company filed a motion seeking relief from the automatic stay to exercise its rights with respect to the Property. In the motion, Central Mortgage Company accepted Reade's $1,500,000 valuation of the Property in Schedule A and asserted there was no equity given the liens of Central Mortgage Company and Real Time Resolutions securing debt in excess of $1,939,555. Central Mortgage Company also disclosed

---

[2] Unless otherwise indicated, all "Code," "chapter" and "section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 after its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005). "Rule" references are to the Federal Rules of Bankruptcy Procedure ("FRBP"), which make applicable certain Federal Rules of Civil Procedure ("F.R.Civ.P."). "LBR" references are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California ("LBR").

2

that a notice of default was recorded on January 18, 2011, and a foreclosure sale was originally scheduled for March 23, 2011.  Reade did not oppose the motion.  Leslie, on the other hand, negotiated a stipulation with Central Mortgage Company to permit the stay to remain in effect pending efforts to market and sell the Property by July 31, 2012, believing that the Property was worth closer to $2,323,000 and that there might be equity in the Property which could be realized for the benefit of creditors.  Leslie also entered into a stipulation with Reade which allowed her to continue residing on the Property without making mortgage or tax payments and to continue to collect rent of $3,500 per month from a tenant leasing a portion of the Property.  In consideration therefor, Reade agreed, among other things, that "any homestead exemption she may eventually claim in the Property will be reduced by the following: (1) $27,250 of her personal property exemptions unless she is able to exempt such amounts using the Section 704 series of exemptions; (2) the sum of $3,000 (representing the negotiated and agreed amount of the fair market rental value of the Property minus the rent being collected) for each month beginning November 2011 and continuing until [Reade] vacates the Property; and (3) the amount, if any, that the rent collected on the Property in any particular month is greater than the expenses paid for the maintenance of the Property using such rents based on the accounting to be provided [Leslie] . . . ."[3]  The court approved the stipulation between Leslie and Reade on May 30, 2012.

On July 13, 2012, Leslie filed his Chapter 7 Trustee's Motion for Order: (1) Approving the Sale of Real Property Free and Clear of All Liens, Claims and Encumbrances Pursuant to 11 U.S.C. §§ 363(b)(1) and (f); (2) Approving Payment of Real Estate Commission; (3) Approving Proposed Bidding Procedures; (4) Approving Surcharge of Collateral Pursuant to 11 U.S.C. § 506(c); and Granting Related Relief ("Sale Motion").  Even in the absence of spirited overbidding, Leslie estimated in the Sale Motion that the sale would generate net proceeds of at least $88,000 based on the following calculation:

```
Consideration:                              $1,750,000
Less: Lien (Central Mortgage Company)      ($1,500,000)
```

---

[3] Leslie RJN at 105:15-23.

3

| | |
|---|---|
| Less: Lien (Real Time Resolutions) | ($30,000) |
| Less: Costs of Sale (estimated at 5.25%) | ($92.000) |
| Less Taxes (estimated) | ($0) |
| Less: American Express Abstract of Judgment (disputed) | ($0) |
| Less: Homestead Exemption (estimated and to be resolved based on stipulation entered into between [Leslie] and [Reade]) | ($40,000) |
| Equity (estimated) | $88,000 |

Leslie disclosed in footnotes #1 and #2 of the Sale Motion that Central Mortgage Company and Real Time Resolutions were actually owed approximately $1,570,000 and $398,000, respectively, but that he was negotiating with each of the lienholders for a "possible reduction of its payoff" to maximize the recovery for the estate.[4] With respect to the estimated $40,000 homestead exemption, Leslie disclosed in footnote # 4 of the Sale Motion that "[i]f a carve-out for the Estate comes from Central Mortgage or Real Time Resolutions, [Reade] will not be paid any homestead exemption."[5]

In his Supplement to Chapter 7 Trustee's Motion for Order: (1) Approving the Sale of Real Property Free and Clear of All Liens, Claims and Encumbrances Pursuant to 11 U.S.C. §§ 363(b)(1) and (f); (2) Approving Payment of Real Estate Commission; (3) Approving Proposed Bidding Procedures; (4) Approving Surcharge of Collateral Pursuant to 11 U.S.C. § 506(c); and Granting Related Relief ("Supplement"), Leslie updated the court, Reade and parties in interest regarding his negotiations with Central Mortgage Company and Real Time Resolutions, and corrected his statement in the Sale Motion regarding a proposed distribution to Reade on account of any claimed homestead exemption.[6] Leslie stated that "[a]llocation for payment of the homestead exemption to [Reade] was in error."[7] Leslie further stated:

> By having Real Time Resolutions (and hopefully Central Mortgage Company) agree to a short pay, the Estate will be able to create "equity" where there

---

[4] Id. at 58:24-28.

[5] Id. at 59:28.

[6] Id. at 83:10-84:24.

[7] Id. at 83:25-26.

4

> otherwise would be none. Any further reductions in the amounts to be paid to the secured creditors will be treated as "equity," which equity will solely inure to the benefit of the Estate and its creditors and not to any claims junior to that of the second lienholder, including [Reade's] homestead exemption. It was originally contemplated that the sales price would be higher so that if there was anything left, [Reade] would be paid the balance amount of her homestead exemption."[8]

Leslie was ultimately successful in securing a stipulation with both Central Mortgage Company and Real Time Resolutions under the terms of which Central Mortgage Company and Real Time Resolutions each agreed to a sale of the Property free and clear of its lien in consideration for a cash payment at escrow in a reduced amount.

Reade did not file written opposition to the Sale Motion. However, Reade appeared through counsel at the hearing on August 7, 2012, claiming that she was entitled to a homestead exemption in the Property and seeking additional time to vacate the Property.

On August 12, 2012, the court entered an Order: (1) Approving the Sale of Real Property Free and Clear of All Liens, Claims and Encumbrances Pursuant to 11 U.S.C. §§ 363(b)(1) and (f); (2) Approving Payment of Real Estate Commission; (3) Approving Proposed Bidding Procedures; (4) Approving Surcharge of Collateral Pursuant to 11 U.S.C. § 506(c); and (5) Granting Related Relief ("Sale Order") which, in pertinent part, authorized (a) the sale of the Property to Morris Paulson and/or his assignee for the sum of $1,750,000; (b) payment commissions, costs of sale and taxes; (c) payment of the sum of $1,500,000 to Central Mortgage Company at close of escrow in full satisfaction of its lien securing a debt of approximately $1,570,000; and (d) payment of $30,000 to Real Time Resolutions at close of escrow in full satisfaction of its lien securing a debt of approximately $345,975.[9] At Reade's request, the court also gave Reade until September 4, 2012, to vacate the Property and ordered that "[t]he sum of $40,000 derived from the net proceeds of the sale (after payment of all secured liens, escrow fees, broker's fees, taxes, etc. as discussed above), shall be held by the trustee subject to further

---

[8] Id. at 84:17-24.

[9] Id. at 92. Although the Sale Order refers to an approved surcharge of collateral, Leslie specifically withdrew at the hearing his request for a surcharge of the collateral held by Central Mortgage Company and Real Time Resolutions pursuant to 11 U.S.C. § 506(c).

Order of this Court or agreement of the parties regarding the Debtor's homestead exemption in the Property, if any."[10]

On January 19, 2014, Reade filed her Amended Schedule C in which she valued the Property at $1,675,000 and claimed a $75,000 homestead exemption pursuant to California Code of Civil Procedure § 704.730. Leslie timely objected to Reade's amended claim of exemption. On February 27, 2014, Reade filed her response in opposition to the motion. Leslie replied on March 6, 2014. After a hearing on March 13, 2014, the matter was taken under submission.

## II. DISCUSSION

This court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157(b) and 1334(b). This contested matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (O). Venue is appropriate in this court. 28 U.S.C. § 1409(a).

### A. Standard Applicable to Amended Claims of Exemption and Objections Thereto

Section 522 governs the allowance of exemptions in bankruptcy. 11 U.S.C. § 522. A debtor's right to a claimed exemption is determined as of the petition date. See Goswami v. MTC Dist. (In re Goswami), 304 B.R. 386, 391-92 (9th Cir. BAP 2003) ("[T]he critical date for determining exemptions is the petition date."). California has chosen to "opt out" of the federal exemption scheme. 11 U.S.C. § 522(b)(1); Cal.Civ.Proc.Code § 703.130. As a result, California residents filing for bankruptcy must choose from two sets of exemption options under state law. Flinn v. Morris (In re Steward), 227 B.R. 895, 898 (9th Cir. BAP 1998). "One set of exemptions are the state law non-bankruptcy exemptions, including a homestead exemption, . . . [and] [t]he other set of exemptions is modeled closely upon the federal exemptions listed in § 522(d)." Id. However, [a] debtor may choose only one set of exemptions. Id.; see Cal.Civ.Proc.Code § 703.140(a).

Exemptions serve to protect and foster a debtor's fresh start from bankruptcy. See In re Hice, 223 B.R. 155, 157 (Bankr. N.D. Ill. 1998); Pavich v. Bernstein (In re Pavich), 191 B.R. 838, 846 (Bankr. E.D. Cal. 1996). Under the Code and California law, exemptions are to be

---

[10] Id. at 97:4-7.

6

construed broadly and liberally in favor of the debtor. In re Arrol, 207 B.R. 662, 665 (Bankr. N.D. Cal. 1997). Homestead exemptions, in particular, "'are to be construed liberally on behalf of the homesteader.'" Id. at 665, quoting Ingebretsen v. McNamer, 187 Cal. Rptr. 529, 536 (1982). A debtor claims an exemption by filing "a list of the property that the debtor claims as exempt." 11 U.S.C. § 522(l); FRBP 4003(a). The objecting party has the burden of proving that the exemption is not properly claimed. FRBP 4003(c). Absent a timely objection, "the property claimed as exempt on such list is exempt." 11 U.S.C. § 522(l); FRBP 4003(b). See Taylor v. Freeland & Kronz, 503 U.S. 638, 643-44 (1992); Hyman v. Plotkin (In re Hyman), 967 F.2d 1316, 1319 n.6 (9th Cir. 1992). Property remaining in the estate after allowance of the debtor's exemptions is subject to administration by the trustee for the benefit of creditors. In re Rolland, 317 B.R. 402, 413 (Bankr. C.D. Cal. 2004).

Exemptions can be amended at any time during the pendency of a bankruptcy case. See FRBP 1009(a) ("A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed."). See also Andermahr v. Barrus (In re Andermahr), 30 B.R. 532, 534 (9th Cir. BAP 1983) ("A debtor does not need court permission to amend any of his schedules so long as the case is still open."). "The right to amend is not the same as the right to the exemption." Id. However, bankruptcy courts have no discretion to deny an exemption amendment no matter when it is claimed absent a showing that the amendment is proposed in bad faith or would prejudice creditors. Arnold v. Gill (In re Arnold), 252 B.R. 778, 784 (9th Cir. BAP 2000); see Magallanes v. Williams (In re Magallanes), 96 B.R. 253, 256 (9th Cir. BAP 1988) (stating that "[a]mendments are and should be liberally allowed at any time absent a showing of bad faith or prejudice to third parties" and that such a standard augments a debtor's "fresh start").

Bad faith or prejudice must be established by a preponderance of the evidence. Nicholson v. Nicholson (In re Nicholson), 435 B.R. 622, 632 (9th Cir. BAP 2010). Bad faith is determined by an examination of the "totality of circumstances." Kaelin v. Bassett (In re Kaelin), 308 F.3d 885, 889 (8th Cir. 2002). Delay in claiming an exemption, of and by itself, does not constitute bad faith. Arnold, 252 B.R. at 785. But a debtor's intentional and deliberate

delay in amending an exemption for the purpose of gaining an economic or tactical advantage at the expense of creditors and the estate may constitute "bad faith." In re Kauffman, 299 B.R. 641, 644 (Bankr. M.D. Fla. 2003); In re Talmo, 185 B.R. 637, 646 (Bankr. S.D. Fla. 1995).

### B. The "Carve-out" Constituted Net Proceeds from the Sale of the Property Which Vested in the Estate

Leslie argues that the funds received from the sale of the Property are attributable solely to a carve-out of funds otherwise payable to Central Mortgage Company and Real Time Resolutions on account of their consensual liens on the Property, which was negotiated by Leslie with Central Mortgage Company and Real Time Resolutions to secure their consent to a sale of the Property free and clear of their respective liens.  As such, the funds are not subject to Reade's homestead exemption claim.  Leslie argument is somewhat confusing.  At one point, Leslie states that "the proceeds at issue are not property of the Estate."[11]  Later, Leslie asserts that "Central Mortgage and RT Resolutions agreed to give a carve-out of their liens to the Estate, not the Debtor."[12]  But the upshot of Leslie's contention is that the funds belonged to Central Mortgage Company and Real Time Resolutions, were given by Central Mortgage Company and Real Time Resolutions to Leslie for the benefit of the estate, not Reade, and did not constitute net proceeds from the sale of estate property after the payment of the consensual liens – to which a properly claimed homestead exemption would normally attach.

There appears to be no dispute that Reade was residing on the Property on the petition date and would otherwise be entitled to claim a homestead exemption.  Nor is there any dispute regarding the fact that there was no equity in the Property at any time between the petition date and the sale date because the debt secured by the consensual liens of Central Mortgage Company and Real Time Resolutions exceeded the value of the Property.  Leslie has the burden of establishing that Reade is not entitled to the claimed exemption.  In the court's view, the

---

[11] Chapter 7 Trustee's Motion Objecting to Debtor's Amended Homestead Exemption ("Leslie's Motion"), 4:22.

[12] Id. at 5:1-2.

8

evidence presented by Leslie does not establish that the source of the funds which is the target of Reade's homestead exemption claim was a "carve-out" of the creditors' money, as alleged by Leslie.

Leslie's stipulation with Central Mortgage Company states: "Central Mortgage agrees to the sale of the Property so long as it is paid the sum of $1,500,000 from the proceeds of the sale of the Property and so long as escrow closes on the sale of the Property no later than September 30, 2012.[13] Leslie's stipulation with Real Time Resolution contains similar language, stating: "RealTime Resolutions agrees to the sale of the Property so long as it is paid the sum of $30,000 from the proceeds of the sale of the Property and so long as escrow closes on the sale of the Property no later than September 30, 2012."[14] Each stipulation reflects the secured creditor's agreement to release its lien and consent to a sale of the Property for an amount less than the full amount due at closing under its note and deed of trust. There is no language in either stipulation identifying the amount of funds to be paid at close of escrow on account of the secured creditor's consensual lien and a specific amount thereafter to be "carved out" of such distribution and returned to the trustee for the benefit of the estate. Nor is there evidence of an escrow statement reflecting, for example, that Central Mortgage Company was paid the sum of $1,570,000 at close of escrow and that out of such distribution Central Mortgage Company returned for the benefit of the estate the sum of $70,000. Neither stipulation contains language prohibiting the debtor from receiving any portion of the sale proceeds generated by the secured creditor's voluntary debt reduction, or making the stipulation contingent upon the debtor receiving nothing on account of a homestead exemption claim, as contended by Leslie.

The court finds that Reade's interest in the Property became property of the estate upon the filing of her bankruptcy petition. When the Property was sold, the funds received by Leslie constituted net proceeds from the sale of the Property which vested in the estate. Reade had a right to amend her claim of exemptions to assert a $75,000 homestead exemption in the Property

---

[13] Id. at 15:5-7.
[14] Id. at 11:20-22.

at any time during the pendency of her case. Absent a showing of bad faith by Reade or prejudice to creditors, the court has no discretion to deny Reade's amendment to exemptions.

### Leslie Has Failed to Establish Bad Faith

In the alternative, Leslie asserts that Reade's amended exemption claim should be disallowed because it was filed in bad faith. Reade did not conceal the Property upon the filing of the petition. The Property was disclosed in the schedules, together with the nature and amount of each lien encumbering the Property. Despite his claim that Reade undervalued the Property in her schedules, Leslie did not object to Reade's discharge. She received a discharge on August 21, 2012.

Leslie was on notice as early as April 13, 2012, that Reade may claim a homestead exemption in the Property. Leslie entered into a stipulation with Reade four months prior to the sale of the Property in which Leslie (a) acknowledged that Reade might later amend her claim of exemptions to assert a homestead exemption in the Property; and (b) addressed the issue as to how that homestead exemption would be calculated based upon the exemptions claimed under C.C.P. § 703.140(b) and her continued occupancy of the Property after the petition date. The stipulation was approved by the court. Although she had yet to claim a homestead exemption, Reade appeared through counsel at the hearing on the Sale Motion to make certain that net proceeds from the sale were set aside pending an adjudication of any homestead exemption claim she might make pursuant to the stipulation with Leslie. True, Reade waited 17 months after entry of the Sale Order to file her Amended Schedule C. But as previously stated, delay in filing an amendment, standing alone, does not prejudice creditors. Arnold, 252 B.R. at 785. But Leslie has not established by a preponderance of the evidence that Reade intentionally and deliberately delayed amending her exemptions for the purpose of gaining an economic or tactical advantage at the expense of creditors and the estate or that Leslie detrimentally relied on Reade's original Schedule C in proceeding with a sale of the Property.

### Leslie Has Failed to Establish Prejudice to Creditors

"Prejudice to creditors is clearly present when they suffer an actual economic loss due to a debtor's delay in claiming his exemption." Id. at 787. In his motion, Leslie alleges that the

"creditors will not receive anything if the Debtor's amended exemption is allowed."[15] However, this conclusion is not supported by specific evidence in the declaration Leslie filed in conjunction with his motion. Leslie asserts in reply to Reade's opposition that "allowing the Debtor's homestead exemption will result in extreme prejudice to the Estate and creditors," stating that:

> Creditors will be prejudiced if the homestead exemption is allowed as the motion and notices relating to the sale of the Property did not inform creditors that the Debtor would be paid a homestead exemption. The motion informed creditors that there would likely be funds available to make a distribution to unsecured creditors which will not be possible now if the Debtor's late homestead exemption is allowed. In fact, this case is likely administratively insolvent. The Estate currently has on hand less than $27,000 and the Debtor's former family law counsel has a priority unsecured claim in an amount greater than that. If the exemption is allowed, unsecured creditors (including the Debtor's former family law counsel) will receive nothing. . . Not only will creditors be prejudiced, but administrative creditors (including the Trustee and counsel) will also be prejudiced. Substantial judicial resources were expended which would not have been necessary had the Debtor timely filed the exemption. If the Debtor's late homestead exemption is allowed, the Trustee and counsel could be required to disgorge fees already paid to them, thus resulting in prejudice to the Trustee and his counsel for incurring the expense to administer the Property without being compensated."[16]

Despite these allegations, Leslie did not submit a declaration or other evidence in conjunction with his reply to support a finding of actual prejudice to the trustee or creditors based on Reade's delay in claiming the proper exemption. The court notes that Leslie and his professionals have received interim compensation for their work in conjunction with the sale. By order entered on January 16, 2013, the court authorized an interim allowance and payment of fees and expenses totaling $93,430.37 to Leslie and his professionals for services rendered to the estate from approximately October 20, 2011 to November 6, 2012. At that time, the cash balance of the estate was $121,860.41. Furthermore, no creditor objected to Reade's amended claim of exemption nor did any creditor appear at the hearing to allege actual prejudice. As the court

---

[15] Id. at 5:11-12.

[16] Chapter 7 Trustee's Reply to Opposition of Debtor to Motion Objecting to Debtor's Amended Homestead Exemption, 5:6-25 (citations omitted).

noted in Arnold, "some theoretical disappointment of expectations, without proof of actual damage, [does not] constitute actual prejudice." Id. Absent credible evidence of actual prejudice to creditors and other third parties, Reade's amended exemption must be allowed. See Id. at 789.

### CONCLUSION

For the reasons stated, the court overrules Leslie's objection to Reade's amended claim of exemption. There is no basis in the record to disallow Reade's amended claim of exemption based on actual prejudice or bad faith. Reade's claim of a $75,000 homestead pursuant to C.C.P. § 704.730 will be allowed subject to the terms of the stipulation between Leslie and Reade approved by the court on May 30, 2012.

A separate order will be entered consistent with this Memorandum Decision.

###

Date: March 28, 2014

Peter H. Carroll
United States Bankruptcy Judge